IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ASHLEY FURNITURE INDUSTRIES, INC.,

                                   OPINION AND ORDER

                 Plaintiff,

                                   07-cv-230-bbc

           v.

LIFESTYLE ENTERPRISE, INC.,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiff Ashley Furniture Industries, Inc. brought this patent infringement action alleging that a dresser, panel bed, and mirror sold by defendant Lifestyle Enterprise, Inc. infringe its U.S. Design Patents Nos. D518,311, D518,660, and D519,286. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1338. Before the court are defendant's motion for summary judgment of non-infringement and the parties' cross motions for summary judgment on defendant's invalidity defenses. Also before the court are several motions to strike materials presented on summary judgment.

       I conclude that the accused products are sufficiently similar to the patented designs in overall appearance and impression and incorporate enough potential points of novelty to make the issue of infringement a question of fact for the jury. In response to plaintiff's

motion, defendant has abandoned all invalidity defenses except obviousness.  On that subject however, defendant has not come forward with any prior art references that could render the designs obvious to a furniture designer of ordinary skill.  This conclusion is affirmed by objective evidence that the patented designs met with commercial success and were copied by defendant.

I find the following facts material and undisputed for purposes of the pending motions.

## FACTS

Plaintiff and defendant are competitors in the business of selling furniture to retailers, who in turn sell them to household consumers.   Plaintiff owns furniture design patents for furniture, including the following three United States design patents which are the subject of this suit:  D518,311 for a dresser,  D518,660 for a panel bed, and D519,286 for a mirror. Defendant's accused products are the Lifestyle Royale Collection  B6144 dresser, panel bed, and mirror.  Juxtaposed below are the design patent drawings on the left and pictures of the accused products on the right.

2







**Figure 1**



**Figure 2**





**Figure 1**

Defendant's expert, N. Sherwood Robertson, identified as primary prior art references for purposes of obviousness analysis the Edwardian dresser, Northumberland bed, and Tuscany mirror, all manufactured by Pulaski Furniture Corporation.  Juxtaposed below are the design patent drawings and pictures of the related, asserted primary references.

Patented design

Edwardian Dresser





Northumberland Bed

Patented Design





Patented Design                    Tuscany Mirror

   

Plaintiff sells furniture incorporating the patented designs in its North Shore and South Shore furniture collections.   Plaintiff's North Shore and South Shore bedroom sets retail for $2499.  Since introducing its furniture embodying the patented designs in 2004, plaintiff has sold 40,000 dressers, 25,000 panel beds and 37,000 mirrors yielding total sales of more than $30 million.

During the development of the accused B4166 dresser, bed and mirror, defendant purchased a North Shore dresser, bed and mirror.  Defendant also used sketches of the commercial embodiments of the patents-in-suit as design aids.  In May 2006, defendant produced a price list for its B6144 furniture that featured a picture of plaintiff's North Shore bed.

OPINION

Two issues are presented on the pending motions for summary judgment: (1) whether plaintiff has presented sufficient evidence to create an issue of fact on infringement of each patent; (2) whether obviousness can be determined as a matter of law. Both issues must be approached with caution on summary judgment because they involve an inherently fact-intensive inquiry into how reasonable jurors would perceive the overall impression of ornate furniture designs. Amini Innovation Corp. v. Anthony California, Inc., 439 F.3d 1365, 1371 (Fed. Cir. 2006).

Claim construction has a different meaning and role in design patent infringement actions from those it has in utility patent disputes. The design patent context offers only a limited role for claim construction, in the sense that the court makes a legal determination concerning the scope and meaning of the claims. One legal determination is to separate the ornamental aspects of the design, which are protected by a design patent, from the functional aspects, which are not. OddzOn Products, Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997). Another legal determination involves the interpretation of the words in a design patent that introduce the drawings. Goodyear Tire & Rubber Co. v. Hercules Tire and Rubber Co. Inc., 162 F.3d 1113, 1116 (Fed. Cir. 1998). Neither party suggests that either of these issues is relevant to this dispute.

However, the term claim construction is sometimes used in design patent law to

7

describe a written articulation of the overall visual impression of the design necessary to permit appellate review of the court's legal conclusions on infringement and invalidity. Durling v. Spectrum Furniture Co., Inc., 101 F.3d 100, 103-04 (Fed. Cir. 1996).  Used in this sense, claim construction is not itself a legal conclusion, but merely an essential step in assessing whether the issues of infringement and invalidity may be resolved as a matter of law or whether they present fact issues for the jury.  A design patent claim consists almost exclusively of drawings.  Unlike utility patent claim construction, in which the court seeks to clarify the meaning of the terms used in the claims, in design patent construction the court is incapable of clarifying the drawings.  Although a court may instinctively arrive at a legal conclusion concerning whether prior art or an accused product gives the same visual impression as the patented designs, a written description is essential to understand the court's reasoning.  Id.  This type of design patent interpretation is not for the enlightenment of the jury, but for the benefit of a reviewing court.

The objective of this type of design patent claim construction is to create a verbal description evoking the visual image of the design, focusing on the visual impression it creates.  Id at 103-04, n. 2.   In this case, the parties have each proposed a written description of the patented designs for this purpose.  Plaintiff's proposed construction is little more than a reference to the patent drawings.  It does nothing to advance the goal of permitting reasoned review of the court's legal conclusions and is therefore inappropriate.

8

By contrast, defendant's proposed constructions is a laundry list of ornamental features. Listing details of ornamentation is an inappropriate construction because it does not project the overall visual impression of the design.   Consequently, it does not permit a proper comparison because what is relevant is  "the deception that arises as a result of similarities in the overall design, not of similarities in ornamental features considered in isolation." Amini, 439 F.3d at 1371.  The descriptions used in the analysis below seek a middle ground, attempting to evoke the visual image of the overall design, focusing on design elements that most affect the overall visual impression.


A. Infringement

Design patent infringement involves the comparison of the appearance of the patented design as a whole to the accused product.  OddzOn Products, 122 F.3d at 1405. To prove design patent infringement, the patent owner must satisfy both the ordinary observer test and the points of novelty test.   Unidynamics Corp. v. Automatic Products Intern., Ltd., 157 F.3d 1311, 1323 (Fed. Cir. 1998).  Gorham Mfg. Co. v. White, 81 U.S. 511, 528 (1871), established the ordinary observer test:  "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

9

Initially, the parties dispute whether an ordinary observer is a consumer or a buyer for a retail seller.  I conclude that the ordinary observer is the ultimate consumer, not the intermediary retail buyer.  The point of a design patent is to protect against deception in the marketplace for the product, that is, deception of those who "buy and use" the product.  Id. The relevant concern in bedroom furniture design is whether household consumers are likely to purchase defendant's furniture believing it to be plaintiff's design.  Defendant's reliance on Goodyear, 162 F.3d at 1117, for a contrary definition of an ordinary observer is misplaced.  Goodyear held that a trucker was the ordinary observer of a design for tire treads used exclusively on truck tires.  This is because truckers were the ordinary purchasers and users of tires with the patented tread design.  Id. Goodyear did not hold that a tire retailer who resold to truckers was the appropriate ordinary observer.  Here the  product to which the design is applied is a bedroom set; the ordinary purchaser and user of a bedroom set is a homeowner.  Accordingly, the proper question is whether a reasonable jury could find that the resemblance between the patented designs and defendant's furniture is such that an ordinary household consumer would be deceived into believing that the accused furniture employed the patented design.

To satisfy the points of novelty test a patentee must establish that the accused product incorporates the points of novelty of the patented device that distinguish it from the prior art.  Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1383 (Fed. Cir.

10

2004).  The initial step in the points of novelty test is to compare the prior art to the patented design and identify those ornamental features that distinguish the patented design from the prior art.  Goodyear, 162 F.3d at 1118-21.  The second step is discerning whether the points of novelty are present in the accused device.  Id.  Both steps are issues for the finder of fact.  Bernhardt, 386 F.3d at 1384-5.  The issue on summary judgment is whether, viewing the facts most favorably to plaintiff, a reasonable jury could identify sufficient points of novelty that are also present in defendant's furniture to conclude that there is infringement.

As set forth in detail below, I conclude that as to each accused product a reasonable jury could find that the similarity in the overall impressions created by the patented design and the accused product is sufficient to deceive an ordinary purchaser.  I further conclude that a reasonable jury could properly identify points of novelty for each design that are present in the accused furniture, and therefore find that the point of novelty test is satisfied as to each.

1.  D518,311 dresser

The '311 dresser is large and ornate.  The front of the dresser is framed with ornate carvings that include detailed spiral-carved integral columns on the two sides, undulating carvings across the top, and a prominent inverted crest on the bottom.  The dresser has the

appearance of being divided into three components, with a larger component in the center and two equal-sized smaller components on the sides.  The division is accomplished by a serpentine shape with curves that change on the same vertical lines established by three banks of drawers.   The drawer facings give the visual appearance in each column of equal width drawers with two thin drawers on the top of each column of drawers and two taller drawers at the bottom.  The bottom drawers in the center column are divided by vertical lines into three equal segments, giving the appearance of three separate small drawers with large carved rosettes in the centers of the two center segments.

A jury could reasonably find that defendant's B6144 dresser sufficiently resembles that '311 design to deceive an ordinary consumer.  The B6144 dresser incorporates an identical serpentine front, with the same drawer configuration.  Prominent rosette carvings are placed in the center of the two bottom drawers of the center column.  The front of the dresser is  framed with ornate carving, integral side columns and a central bottom crest.

There are several differences between defendant's dresser and the '311 design.  Most notably, the columns do not have a spiral carving, and the top carving is a diagonal lattice rather than the undulating drapery pattern of the '311 patent.  There are also other, less prominent differences in the carving.  However, given the marked similarity in the overall impression and appearance of the dresser and the patented design, a fact issue remains concerning whether the differences are sufficiently prominent that an ordinary observer

12

would be deceived.  I conclude that the matter of the ordinary observer test is properly left to the jury.

Comparing the patented design to the  prior art in the patent prosecution history and presented by defendant's expert, a jury might reasonably find at least the following five points of novelty, all of which are present in the accused Lifestyle dresser:  (1) the overall drawer configuration including three columns of drawers with the two thin top drawers; (2) a serpentine front with a convex center portion and two, wavy side portions  framed on the sides by intricately carved columns; (3) the distinctive appearance of six, approximately square, lower central drawers with large rosette carvings in the centers of the two center drawer panels; (4) four feet, consisting of an upper block portion and lower pad portion; (5) a carved skirt with a central crest, the skirt extending around the sides of the dresser.  Given these potential points of novelty, all of which are present in the accused design, defendant is not entitled to summary judgment of non-infringement based on a failure of the points of novelty test.

2. <u>D518,660 panel bed</u>

The headboard design is a framed, primarily rectangular veneer panel bisected vertically in the center, with a semi-circular portion, approximately three-fourths of the

rectangle in width, centered on top.  The side  framing is ornately carved and includes spiral craved, rounded side columns, terminating on top in a larger, round, carved cap which ends in a plain disc at the top.  The top of the headboard framing follows the contour of the panel, the horizontal side portions finishing flush with the caps of the side columns, and has two rows of ornate carving and a prominent crest above the top third of the arched portion. The footboard panel mimics the shape and construction of the headboard panel except that it has a shallower top arched portion and a slope change in the arched portion where the top sweeps down to meet the rectangular portion.  The footboard panel is flanked on the sides by two stout columns that are ornately spiral carved and include top and bottom discs larger in circumference than the main column.  There are a prominent inverted crest centered beneath the bottom framing rail and a large bracket on each side where the bottom rail meets the side columns.  The top framing rail of the footboard follows the contour of the panel and includes two ornate raised carvings where the arch sweeps down to meet the side columns.

A jury could reasonably find that defendant's B6144 panel bed sufficiently resembles that '660 design to deceive an ordinary consumer.   The head and footboard panels of the B1644 bed are nearly identical in shape and design.  The key prominent elements including the side headboard columns with rounded top caps, stout side footboard columns, headboard and footboard crests, ornate footboard top rail carvings and bottom rail brackets

are present in the accused bed.  The effect is a very similar overall visual impression.  There are some distinct differences between the accused bed and the patented design, including several differences in the details of the carvings, particularly a less heavily carved headboard arch.  Whether these differences are sufficient so that an ordinary purchaser would not be deceived is a question of fact.

Comparing the patented panel bed design to the  prior art in the patent prosecution history and presented by defendant's expert, a jury might reasonably find at least the following points of novelty that are also present in the accused bed: (1) the symmetrical head and footboard crests; (2) carved side headboard columns ending with rounded caps that integrate with the horizontal wings of the top rail; (3) ornate, stout footboard side columns joined to the footboard panel at a point about one third from the top of the columns; (4) bottom footboard rail including a detailed inverted crest in the center and substantial, relatively plan cut braces on each side at the points of joinder with the side columns.  Should the jury identify these as the principal points of novelty, it could reasonably conclude that defendant's bed infringes the '660 patent under the points of novelty test.

### 3.  D519,286 mirror

The patented mirror design is a square mirror with a plain frame immediately adjacent to the mirror and various carved components providing additional framing on the

sides and top. The additional side framing includes spirally carved columns with a block and an ornate side carving at the base of each column extending wider than the columns themselves, and a circular, flat-topped capital on each column. The top frame includes a straight, ornately carved top rail of approximately the same width as the side columns. Above the carved rail is a plain veneer semicircle whose base is about two thirds of the entire width of the frame. Atop the arch is a prominent carved crest. The overall impression is of an ornately framed square mirror with side columns and a top arch and crest.

The accused mirror creates the same basic impression, including plain internal framing, side columns with a block and side carving at the base, round capitals and a plain veneer semicircular top with a carved crest. However, the accused mirror differs in some noticeable respects. The side columns appear slightly narrower and are carved in a different design. The straight, top frame carving is latticed rather than undulating. The top crest is thinner and longer than the patented design. Notwithstanding these differences in detail, the province of the jury to determine whether an ordinary purchaser would not be deceived.

Turning to the point of novelty test, a reasonable jury might identify the following as points of novelty in the patented design over the prior art: (1) a plain veneer semicircle set atop the center of the square framed mirror; (2) top side wings formed by integrating the side column capitals with a horizontal portion of the top frame; (3) column bases for the columns with attached side carvings extending outward beyond the side column framing.

16

Because these could reasonably be identified as points of novelty and because all are present in the accused mirror, a jury could reasonably conclude that the points of novelty test is satisfied.

### B. Obviousness

A design patent is invalid if it would have been obvious to a person of ordinary skill in the art of furniture design to combine the teachings of the prior art to create a design with the same overall visual appearance as the patented design. Durling, 101 F.3d at 193. In order to prevail on the defense, a defendant must establish the elements of obviousness by clear and convincing evidence. Aero Products Int'l., Inc. v. Intex Recreation Corp., 466 F.3d 1000, 1015 (Fed. Cir. 2006). As a threshold matter, the defendant must demonstrate that there is a single prior art reference, known as a primary reference, "the design characteristics of which are basically the same as the claimed design." Id. (quoting In re Rosen, 673 F.2d 388, 391 (C.C.P.A. 1982)). To serve as a primary reference, the identified reference must create basically the same visual impression as the patented design. Durling, 101 F.3d at 93. If a primary reference is identified, the remaining issue is whether there are secondary prior art references that could be used to modify the primary reference, which are so related to the primary reference that the appearance of certain ornamental features in one reference would suggest the application of those features to the other. Id. Finally, objective

17

factors of non-obviousness, including whether the design achieved commercial success and whether the design was copied by others must be considered.  Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1288 (Fed. Cir. 2002).

Plaintiff challenges the existence of a primary reference for any of the three design patents-in-suit.  Alternatively, plaintiff argues that even if a primary reference exists for a patent, there is insufficient evidence of secondary references that would demonstrate the obviousness of a combination that would lead to the patented design.  Defendant has proposed a specific primary reference for each patent, together with secondary references that it contends render the patents obvious.  I conclude that defendant has not identified a proper primary reference for any of the three patent-in-suit and that none of the patented designs are obvious in light of the prior art.

1. Patent No. D518,311

The first inquiry is whether the Pulaski Furniture Edwardian dresser can serve as a primary reference because it creates the same visual impression as the '311 design.  No reasonable jury could find that it does.  The five points of novelty test present in the '311 patent design are central to its visual impression.  Yet all the points of novelty are absent from the Edwardian Dresser.  Furthermore, the Edwardian dresser has two centrally located

18

columns and feet, not present in the patented design, that give the dresser a dramatically different general appearance and visual impression.

Even assuming the Edwardian dresser could serve as a primary reference, the additional and different ornamental features in the patented design are so numerous and varied that no factfinder could conclude that it would be obvious to create the patented design. Although it is possible to find similar decorative elements in secondary references, it would be unreasonable to find that one of ordinary skill would be motivated to combine so many varied elements in the unique combination of the '311 design.

Finally, there is persuasive, objective evidence of non-obviousness, including evidence that leads to the unmistakable implication that defendant copied plaintiff's design to create the accused products. Specifically, defendant admits that it used plaintiff's North and South Shore embodiments in designing the remarkably similar accused products. In addition, plaintiff has realized significant commercial success with the patented design, demonstrated by the sale of 40,000 dressers embodying the patented design.


2. Patent No. D518,660

Defendant proposes the Northumberland bed as the primary reference for purposes of obviousness analysis for the '660 design. A comparison of the Northumberland bed with the '660 design shows that the two designs create substantially different visual impressions.

19

Although there is some similarity in the impressions created by the headboards, the footboards are dramatically different.  The Northumberland footboard is characterized by a heavy straight horizontal top rail that creates a starkly different impression from the arched top, carved ears and prominent columns of the patented design.   In addition, the Northumberland footboard includes a separate center column and foot, while lacking the crest and braces of the '660 design.  The footboard of the Northumberland bed is so dramatically different in its overall appearance that it could not serve as a primary reference.

        Although the headboards of the two designs have the same basic shape, the impressions they create are different because the top crest of the Northumberland headboard is substantially smaller and less ornate than that of the patented design.  Also, the Northumberland headboard includes a prominent raised carving in the center of the veneered panel, leaving a significantly different impression from that of the plain veneered panel of the patented headboard design.  Considering the bed designs overall, no reasonable factfinder could conclude that they create the same basic visual impression and therefore that the Northumberland bed could satisfy the requirement for a primary reference in the obviousness analysis.

        Even accepting the Northumberland bed as a primary reference, creating the patented design would require a number of significant changes, including major modifications to the structure of the footboard and the removal of the headboard's raised panel carving and the

center column and center foot of the footboard.  Nothing in the proposed secondary prior art suggests that this combination of alterations would have been obvious to one of ordinary skill in furniture design.  To the contrary, it appears that the patented design is a relatively novel combination of ornamental features not suggested by the prior art.

The conclusion that the panel bed design of the '660 patent is not obvious is confirmed by the objective evidence of non-obviousness, including defendant's copying and plaintiff's sale of 25,000 beds of the patented design.


3. Patent No. D519,286

The proffered primary reference Tuscany mirror has design characteristics very different from the patented design and it creates a very different visual impression.  Most notably, the extremely heavy carving of the top of the Tuscany mirror creates the appearance of a heavy triangular roof.  This is very unlike the much softer arched appearance at the top of the patented mirror design.  The overall difference in impression is amplified by the ornate semicircular shell carving of the Tuscany mirror that contrasts with the plain veneer of the patented design.  Beyond these obvious differences, the Tuscan mirror appears to have flat, rather than columnar, side framing and to lack the block and carving side bases.  Accordingly, the Tuscany mirror cannot clear the initial hurdle of sufficient similarity to serve as a primary reference.

21

Furthermore, nothing in the proposed secondary prior art would suggest to one of ordinary skill in furniture design the numerous and substantial changes to the Tuscany mirror that would be necessary to produce a design like that of the '286 patent.  Considered in light of the evidence of copying and commercial success, no reasonable jury could find obviousness by the clear and convincing standard.

## C. Miscellaneous Related Motions

In support of its motion for summary judgment, defendant offered the declaration of its expert, Sherwood Robertson, which included several catalogue pictures offered as secondary prior art not included in Robertson's expert report.  Defendant offered a second declaration of Robertson in opposition to plaintiff's motion for summary judgment, which also included new prior art references.  Defendant incorporated these additional prior art references into its proposed findings of fact.   Plaintiff now moves to strike these portions of the declarations and the related proposed findings of fact.  Defendant opposes the motions to strike and moves to supplement its expert reports to include the new prior art and related opinion.

I find it appropriate to grant leave to amend Robertson's expert reports to include the additional matter and to deny both of plaintiff's motions to strike.  The additional proffered prior art and opinion is a minor supplementation of the original report, raising no

22

substantial new issues or opinion.  Notwithstanding its incantation of prejudice, plaintiff was readily able to consider and respond to the new references and it has adduced no evidence that it suffered any actual disadvantage.   The additional material constitutes a minor addition to the body of prior art subsequently discovered or analyzed by the expert.   I conclude that the interest of justice will be best served by permitting supplementation and denying plaintiff's motions to strike.

In a separate motion, defendant seeks to strike the affidavit of Robert Hinrichs, a fact witness who submitted sales figures for plaintiff's furniture, offered by plaintiff to show commercial success in the North Shore and South Shore lines relative to other Ashley furniture lines.  Defendant challenges the affidavit as untimely and irrelevant because defendant has not conceded that the North and South Shore lines embody the patented design. Neither argument has merit.  Concerning timeliness, defendant asserted commercial success, supported by sales figures, as objective evidence of non-obviousness.  In response, defendant questioned, without evidence, whether the sales success might be explained by factors other than the design.  Plaintiff was entitled to rely on the presumption of nexus between design and success in its opening brief.  Brown and Williamson Tobacco Corp. v. Phillip Morris, Inc., 229 F.3d 1120, 1130 (Fed. Cir. 2000).  Not only was defendant's argument in opposition insufficient to overcome the presumption of commercial success, but the presentation of rebuttal evidence in reply was entirely appropriate.

23

Concerning whether the North Shore and South Shore lines embody the patented design, defendant conceded in response to proposed finding of fact 95, dkt. #58 that it used pictures of "Ashley's commercial embodiments" of the patents-in-suit.  Defendant further conceded the point in its brief in support of non-infringement noting that "aspects of the commercial embodiment of Ashley's patented designs are not claimed in the patents." Although defendant argues that plaintiff never claimed these additional aspects such as stain color and marble tops, its argument concedes that the elements of the patented designs are present in the North and South Shore furniture.   Defendant's motion to strike is denied.

ORDER

IT IS ORDERED that

1.    Defendant Lifestyle Enterprise, Inc.'s motion for summary judgment of non-infringement and obviousness is DENIED;

2.    Plaintiff's Ashley Furniture, Inc.'s motion for summary judgment on defendant's invalidity defenses is GRANTED;

3.    Plaintiff's motions to strike the declarations of Sherwood Robertson (dkt ##43 and 69) are DENIED;

4.    Defendant's motion to supplement the expert reports of Robertson (dkt #86) is GRANTED; and

24

5.      Defendant's motion to strike the affidavit of Robert Hinrichs (dkt #83) is DENIED.

Entered this 28th day of February, 2008.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

25